*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

GATEWAY CITY CHURCH, et al.,

*Plaintiffs-Appellants,*

v.

GAVIN NEWSOM, et al.,

*Defendants-Appellees.*

---

*Appeal from a Decision of the United States District Court for the Northern District of California,*
*No. 5:20-cv-08241-EJD · Honorable Edward J. Davila*

## APPELLANTS' REPLY BRIEF

SHARONROSE CANNISTRACI, ESQ.
CANNISTRACI LAW FIRM
236 North Santa Cruz Avenue, Suite 217
Los Gatos, California 95030
(480) 307-5662 Telephone

MARLIS D. MCALLISTER, ESQ.
MCALLISTER LAW GROUP
Post Office Box 756
Pine, Colorado 80470
(650) 346-3792 Telephone

KEVIN T. SNIDER, ESQ., *Counsel of Record*
EMILY C. MIMNAUGH, ESQ.
PACIFIC JUSTICE INSTITUTE
9851 Horn Road, Suite 115
Sacramento, California 95827
(916) 857-6900 Telephone

*Attorneys for Appellants Gateway City Church, Orchard Community Church*
*of Campbell, The Home Church, Inc., The Spectrum Church,*
*San Francisco Bay Area, Inc. and Trinity Bible Church*

---



# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT................................. 1

ARGUMENT ......................................................................................................... 2

    I.    The Four Tandon Principles Are Dispositive ............................................ 3

        A.    The Blueprint Is Not Neutral or Generally
            Applicable—Principle 1 ...................................................... 3

        B.    The Government Must Compare Risks Rather Than
            Reasons for a Gathering—Principle 2 ............................... 3

        C.    The Restrictions on Houses of Worship Are Not
            Narrowly Tailored—Principle 3......................................... 6

        D.    This Appeal Is Not Moot but Properly before the Court—
            Principle 4 ....................................................................... 10

            i.    Supreme Court Order ........................................... 11

            ii.    Expiration & Repeal............................................. 13

            iii.    Repudiation ......................................................... 15

    II.    THE CHURCHES HAVE SUFFERED IRREPARABLE HARM.......................... 17

    III.    THERE HAS BEEN NO IMPROPER DELAY IN SEEKING RELIEF.............. 19

    IV.    THE BALANCE OF HARDSHIPS .................................................... 20

CONCLUSION .................................................................................................. 20

STATEMENT OF RELATED CASES...................................................................... 22

CERTIFICATE OF TYPE SIZE AND STYLE ............................................................. 22

CERTIFICATE OF COMPLIANCE ............................................................................. 22

CERTIFICATE OF SERVICE ....................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Akina v. Hawaii,*
  835 F.3d 1003 (9th Cir. 2016) ........................................................................ 15

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers,*
  941 F.3d 1195 (9th Cir. 2019) ........................................................................ 14

*Calvary Chapel Dayton Valley v. Sisolak,*
  982 F.3d 1228 (9th Cir. 2020) ........................................................................ 18

*Calvary Chapel of Ukiah v. Newsom,*
  No. 2:20-cv-0143-KJM-DMC (E.D. Cal. March 10, 2021) ........................ 8

*Cassell v. Snyders,*
  990 F.3d 539 (7th Cir. March 8, 2021) .................................................. 14, 15

*Church of Lukumi Babalu Aye v. City of Hialeah,*
  508 U.S. 520 (1993) ......................................................................................... 6

*City of L.A. v. Davis,*
  440 U.S. 625 (1979) ....................................................................................... 13

*Cross Culture Christian Ctr. v. Newsom,*
  No. 2:20-cv-00832-JAM-CKD (E.D. Cal. 2020) ........................................ 5

*Danville Christian Academy, Inc. v. Beshear,*
  592 U.S. __, 141 S. Ct. 527 (2020) .............................................................. 14

*Elrod v. Burns,*
  427 U.S. 347 (1976) ....................................................................................... 17

*Fikre v. FBI,*
  904 F.3d 1033 (9th Cir. 2018) ...................................................................... 16

*Friends of the Earth,*
  528 U.S. 167 (2000) ....................................................................................... 12

*Gateway City Church v. Newsom,*
592 U.S. __ (2021) ................................................................ 2, 12, 20

*Harvest Rock Church v. Newsom,*
No. EDCV 20-6414-JGB, 2020 WL 7639584 (C.D. Cal. Dec. 21, 2020) ............... 9

*Harvest Rock Church v. Newsom,*
592 U.S. __, __ S. Ct. __, 2021 WL 406257 (Feb. 5, 2021) ............................ 4, 5, 10

*Int'l Church of the Foursquare Gospel v. City of San Leandro,*
634 F.3d 1037 (9th Cir. 2011) ........................................................ 18

*Knox v. Serv. Emps. Int'l Union Local 1000,*
567 U.S. 298 (2012) .................................................................. 12

*McCormack v. Herzog,*
788 F.3d 1017 (9th Cir. 2015) ........................................................ 16

*Mesquite v. Aladdin's Castle, Inc.,*
455 U.S. 283 (1983) .................................................................. 14

*Northeastern Fla. Chapter of the Associated General Contractors of America v.*
*Cty. of Jacksonville,*
508 U.S. 656 (1993) .................................................................. 15

*Pleasant View Baptist Church v. Beshear,*
No. 20-6399, 2020 WL 7658397 (6th Cir. Dec. 21, 2020) .................................. 14, 15

*Ramsek v. Beshear,*
989 F.3d 494 (6th Cir. 2021) ....................................................... 14, 15

*Roberts v. Neace,*
958 F.3d 409 (6th Cir. 2020) (per curiam) ............................................... 10

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
592 U.S. ___, 141 S. Ct. 63 (2020) (per curiam) .................................. 3, 7, 18

*Rosemere Neighborhood Ass'n v. United States EPA,*
581 F.3d 1169 (9th Cir. 2009) ........................................................ 16

*South Bay United Pentecostal Church v. Newsom,*
    No. 20-cv-00865-BAS-AHG (S.D. Cal. Oct. 15, 2020) ................................................. 9

*South Bay Pentecostal Church v. Gavin Newsom,*
    No. 20-cv-00865-BAS-AHG (S.D. Cal. Dec. 21, 2020) ........................................... 5, 9

*South Bay Pentecostal Church v. Gavin Newsom,*
    985 F.3d 1128 (9th Cir. 2021) ......................................................................... 9

*South Bay United Pentecostal Church, et al. v. Gavin Newsom, et al.,*
    592 U.S. ___, No. 20A136 (20-746) (Feb. 5, 2021) .............................................passim

*Tandon v. Newsom,*
    __ F.3d __, 2021 WL 1185157 (9th Cir. March 30, 2021) ......................................... 2

*Tandon v. Newsom,*
    593 U.S. __ (2021) ................................................................................passim

*Turner Broadcasting System, Inc. v. FCC,*
    507 U.S. 1301 (1993) ................................................................................. 5

*United States v. Concentrated Phosphate Exp. Ass'n,*
    393 U.S. 199 (1968) .................................................................................. 13

## RULES

28 U.S.C. § 1651(a) ......................................................................................... 5

## OTHER AUTHORITIES

Katey Rusch, *How Do You Enforce a Law That Tramples the Land of the Free?*, The New
    York Times (May 11, 2020), https://www.nytimes.com/2020/05/11/us/
    coronavirus-california-lockdowns.html ...................................................... 20

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

The Appellants (or "Churches") have suffered under the yoke of government shutdown edicts for nearly a year. Because the bans on indoor religious services posed an existential threat to the free exercise of religion, the Churches filed a motion for preliminary injunction to be freed from the restrictions during the pendency of this litigation. Partial relief came from the Supreme Court which granted an emergency application for writ of injunction as against Santa Clara County and its public health director (collectively "County") on February 26. The Churches now seek an injunction from this Court to prevent any further restrictions on attendance by the Defendants while the lawsuit works its way through the District Court.

Since the filing of the Opening and Answering Briefs, the Supreme Court has drawn a roadmap that dictates a result in favor of the Churches. On April 12 the Supreme Court granted a writ of injunction against Governor Newsom and Sandra Shewry (collectively "State"). *Tandon v. Newsom*, 593 U.S. __ (2021). Its order enumerated four principles as follows:

(1) government regulations come under strict scrutiny when *any* comparable secular activity is treated more favorably than religious exercise;

(2) comparability is concerned with risk factors rather than the reason for a gathering;

(3) narrow tailoring requires a showing that measures less restrictive to First Amendment activity could not address interests in reducing the spread of COVID;

(4) government withdrawal or modification of COVID restrictions during litigation will not moot a case where a plaintiff remains under constant threat that government officials retain their power to reinstate the challenged restrictions.

The Court explained that these principles dictated the outcome in *Gateway City Church v. Newsom*. Therefore, the *Tandon* principles are dispositive of this interlocutory appeal.

## ARGUMENT[1]

On April 2 the State filed a supplemental authority citing the decision in *Tandon v. Newsom*, __ F.3d __, 2021 WL 1185157 (9th Cir. Mar. 30, 2021), Docket Entry: 27. But the order from this Court was subsequently reversed on April 10 by the Supreme Court. The reversal set out four principles that "dictated the outcome . . . as they did in *Gateway City Church v. Newsom*, 592 U.S. __ (2021)." *Tandon v. Newsom*, 593 U.S. __ , __ (2021). Because the State submitted *Tandon* as supplemental authority and the Supreme Court noted that its reasoning dictated its order of February 26 in this case, this Reply Brief will respond to issues raised in the Defendants' answering briefs by structuring them around the four principles outlined in the *Tandon* decision. Miscellaneous arguments in the answering briefs will follow.

---

[1] By this Reply Brief, the Churches will not repeat arguments previously set forth in the Opening Brief.

# I. THE FOUR *TANDON* PRINCIPLES ARE DISPOSITIVE.

## A. The Blueprint Is Not Neutral or Generally Applicable—Principle 1

Religious gatherings are relegated to second class status in comparison to other gatherings. As a result, the State has essentially abandoned its position that the Blueprint and related directives constitute neutral and generally applicable laws. In the first principle that the Supreme Court set out in *Tandon*, the Court explained as follows:

> First, government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U. S. ___, ___– ___ (2020) (*per curiam*) (slip op., at 3–4). It is no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue.

*Tandon v. Newsom*, 593 U.S. at ___ (2021) (emphasis added). In view of this first principle, the shutdown orders for places of worship are subject to strict scrutiny.

## B. The Government Must Compare Risks Rather Than Reasons for A Gathering—Principle 2

From the outset of this litigation until now, the Churches have contended that religious gatherings are not treated the same as other gatherings. This position rests as consistent with the second *Tandon* principle that "[c]omparability is concerned with the risks various activities pose, not the reasons why people gather." *Tandon v. Newsom*, 593 U.S. at ___. Airports received favored treatment from the outset because they are deemed critical infrastructure. 1-ER-7:19-20. From the launch of the Executive Order

and subsequent Blueprint, Churches were compared to airports not based on risk but on the function of the respective venues.

Airports were given a dispensation of grace because of what they do. When the State weighed the value of religious gatherings in the balance, places of worship were found wanting by secular eyes examining the scales. Related to this, the State mischaracterizes the position of the Churches with regards to capacity restrictions. State Brief, p. 26-28. Capacity restrictions pose no threat to First Amendment rights if applied equally to **all** without exceptions. But when relative risk is not the prime mover for comparison, any secular exemption not extended to the sacred by its nature falls outside of neutrality and general applicability.

The State makes the claim that the different treatment received by airports has been challenged in the Supreme Court but to no avail. State Brief at p. 22, 30, citing *Harvest Rock Church v. Newsom*, Emergency App. for Writ of Inj. (Jan. 26, 2021). This claim that airports were at issue stems from the *Harvest Rock* emergency application for a writ of injunction. The link[2] that the State provides (State Brief, fn. 13) to the application shows that the word *airport* only makes three appearances in long lists (*Harvest Rock* Application, p. 13-14, 27) of other entities. That the word *airport* is buried in general lists cannot be reasonably construed as having had the issue litigated.

---

[2]https://www.supremecourt.gov/DocketPDF/20/20A137/167185/20210125203732
5 91_Emergency%20Application%20for%20Writ%20of%20Injunction%20-
%20FINAL.pdf.

Airport gates were certainly not put at issue in other litigation as set forth here. The State also misapprehends the standard of review for the application. Unlike motions for a temporary restraining order or preliminary injunction, in an application for a request for emergency relief in the Supreme Court it must be "indisputably clear" that the applicant is entitled to the relief sought. 28 U.S.C. § 1651(a); *Turner Broadcasting System, Inc. v. FCC*, 507 U.S. 1301, 1302 (1993) (Rehnquist, C.J., in chambers). The State reads too much into the denial of the *Harvest Rock* application.

The State also claims that the capacity restrictions have been found to satisfy strict scrutiny. State Brief at p. 30-31. A case cited to support this assertion is *Cross Culture Christian Ctr. v. Newsom*, No. 2:20-cv-00832-JAM-CKD (E.D. Cal. 2020). That decision denied a request for a temporary restraining order. Airports are never mentioned in the order. Further, the order denying the TRO used rational basis review instead of strict scrutiny. The second district court decision cited by the State is *S. Bay United Pentecostal Church v. Newsom* No. 20-cv-00865, __ F. Supp. 3d __, 2020 WL 7488974 (S.D. Cal. Dec. 21, 2020). The State fails to mention that the decision in that case was upheld by this Court, then reversed by the Supreme Court less than three weeks later in *South Bay II*. Most importantly, neither of the two district court cases had available the *Tandon* principle of comparability of risk rather than reason for the gathering.

### C. The Restrictions on Houses of Worship Are Not Narrowly Tailored—Principle 3

The third principle that the *Tandon* Court set out is narrow tailoring. The standard for strict scrutiny by means of narrow tailoring "'is not watered down' it 'really means what it says.'" *Tandon*, 593 U.S. __, quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).

In the District Court the State raised a narrow-tailoring defense based on *singing*. The lower court latched onto that defense. Thus, the Churches are compelled to address singing on appeal.

Responding to the Churches' point that the State allows singing in the music and entertainment industry, the State points to "binding labor agreements with stringent requirements for COVID-19 testing[] which have been incorporated into the relevant industry guidance." State Brief at 10-11. As evidence for this the State filed as an exhibit the *Industry Guidance to Reduce Risks* (March 26, 2021) from the California Department of Public Health. Under *Music, film, and TV production* it reads in part, "cast, crew and other industry workers must abide by safety protocols **agreed by labor and management**." State's Request for Judicial Notice, Exhibit 1, p. 24 (emphasis added). *See also*, Churches' Request for Judicial Notice at p. 18-19 (Decl. of Coleen Powell, ¶¶ 6-7, describing negotiations and agreements between studios and the Screen Actors Guild and Teamsters; Return to Work Agreement between Directors Guild of America and Alliance of Motion Picture and Television Producers

at p. 81-118; Decl. of Duncan Crabtree-Ireland who is the general counsel and chief operating officer for the Screen Actors Guild – American Federation of Television and Recording Artists, ¶ 2, describing the private industry based COVID-19 safety protocols for singers which are monitored by the labor union at p. 13-15).

These documents, produced by both the State and the Churches, indisputably show that the State allows the entertainment sector to self-regulate when it comes to singing. In contrast, the State will not allow religious institutions that same latitude. This favorable treatment of the entertainment industry demonstrates that the State does not use the least restrictive means to achieve its interests.

> [N]arrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.

*Tandon*, 593 U.S. ___, citing *Roman Catholic Diocese*, 592 U.S. at ___ - ___ (slip op. at 4-5); *South Bay*, 592 U.S. at ___ - ___ (statement of Gorsuch, J.)(slip op. at 3).

The State has not shown that the less restrictive measure of self-regulation as done with the entertainment industry would pose a greater threat if places of worship were given the same latitude. Instead, the State trusts the judgment of those engaged in secular singing but not those engaged in sacred singing. This disparate treatment by the State demonstrates a failure to meet its burden of demonstrating the use of the least restrictive means to achieve its purpose.

Reliance on a recent case from the Eastern District of California does not advance the State's position. State Brief, p. 42, citing *Calvary Chapel of Ukiah v. Newsom*, 2:20-cv-0143 (E.D. Cal. March 10, 2021). That court did not address the specific issue of the State allowing one sector to regulate itself but not extending the same treatment to religious institutions.

The State further notes that passengers don't sing at airports. True enough. But the State is not concerned enough about singing to ban it for all industries.

> [T]he government has the burden to establish that the challenged law satisfies strict scrutiny. To do so in this context, it must do more than assert that certain risk factors "are always present in worship, or always absent from the other secular activities" the government may allow.

*Tandon*, 593 U.S. ___, citing *South Bay United Pentecostal Church* v. *Newsom*, 592 U. S. ___, ___ (2021) (statement of Gorsuch, J.) (slip op., at 2); *Id.* at ___ (Barrett, J., concurring) (slip op., at 1).

The State asserts that the Churches did not suggest any alternative that would reduce risk to the same extent as the percentage capacity restrictions. State Brief at p. 36-37. Who has the burden here? Under strict scrutiny review, it is not for the plaintiff to set forth an alternative plan. The burden rests with the government to establish that it is using the least restrictive means. *Id.*

Narrow tailoring is absent for another reason. The District Court agreed with the State—on government say-so alone—that airports have better ventilation. State Brief at p. 23, 33-34. No affidavit from an expert on ventilation appears in the record. Whether that "finding" by the District Court is true is anyone's guess. Whatever the

case may be, instead of separating the sheep from the goats so that religious gatherings are among the disfavored, the State could have tethered numbers of persons or percentage capacity to ventilation requirements. Likewise, the State could have set restrictions based on square footage rather than categories, including religion. For the first time on appeal, the State claims that "percentage restrictions in the Blueprint are based on the capacity allowed by the Building Code and Fire Code." State Brief at p. 45, fn. 19. Far from supporting the State's position, this proves the Churches' point. Foregoing the neutral criteria related to building ventilation and/or square footage, the State again seeks to utilize categories. The use of categories is the fundamental constitutional concern. When religious gatherings end up in a disfavored category, the restrictions fail neutrality and by extension narrow tailoring.

To support its assertion of narrow tailoring by pointing to "risk factors" that it has created, the State oddly alleges that the courts have upheld its risk factor claim for narrow tailoring, citing certain district court cases and one from this Court. *See*, *Harvest Rock Church v. Newsom*, No. EDCV 20-6414-JGB, 2020 WL 7639584 (C.D. Cal. Dec. 21, 2020) (State Brief at p. 33, 35-36, 40, 46, 48-49); *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128 (9th Cir. 2021) (State Brief at p. 19); *S. Bay United Pentecostal Church v. Newsom*, No. 20-cv-00865, __ F. Supp. 3d __, 2020 WL 7488974 (S.D. Cal. Dec. 21, 2020) (State Brief at p. 35, 40, 48-49); *S. Bay United Pentecostal Church v. Newsom*, No. 20-cv-00865, __ F. Supp. 3d __, 2020 WL 6081733 (S.D. Cal. Oct. 15, 2020) (State Brief at p. 32).

Memories can be short. These rulings were overturned by the Supreme Court. *See*, *Harvest Rock Church v. Newsom*, 592 U.S. __, No. 20A137, __ S. Ct. __, 2021 WL 406257 (Feb. 5, 2021); *South Bay United Pentecostal Church v. Newsom*, 592 U.S. __ (Feb. 5, 2021) (*South Bay II*). Importantly, Justice Gorsuch's concurrence in *South Bay II* directly addresses the State's risk factors, which he finds unconvincing. In sum, since the Supreme Court found the State's risk factor reasoning fell short, resurrecting those same failed factors here will not serve to redeem a flawed argument to support narrow tailoring.

One final point under narrow tailoring that the State raises is that the District Court asserted persons in places of transit are "independent" and "asocial" as opposed to the atmosphere of fellowship at a church. 1-ER-21-22. This is akin to the notion that the faithful follow rules at work but not at worship. The Supreme Court rejected this stating, "The State cannot 'assume the worst when people go to worship but assume the best when they go to work.'" *Tandon*, 593 U.S. ___, quoting *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020) (*per curiam*). Similarly, the assumption that the faithful will follow safety rules while traveling but not when they worship logically fares no better.

### D. This Appeal Is Not Moot but Properly before the Court—Principle 4

The gravamen of the County's Answering Brief is that the interlocutory appeal is moot because County shutdown orders have been lifted due to the Supreme

Court's order granting the Churches' application for an emergency writ of injunction. Co. Brief, p. 14-24. Similarly, the first point raised in the State's Answering Brief is that the ban on indoor services under the "Blueprint" has been withdrawn. State's Brief, p. 25-28. Whether advanced as a mootness doctrine or the recent change in the Blueprint for places of worship, the arguments for both the State and County are analytically the same. The Churches offer three reasons in opposition.

### i.   Supreme Court Order

There have been multiple lawsuits brought by religious institutions and people of faith against government restrictions on gatherings for religious worship. Of late, the State has put forward much the same argument in these cases as proffered in its Answering Brief. Namely, the State's position is that its orders have been amended as public health conditions change. Indeed, since the filing of the State's Brief, the State lifted the capacity restrictions on places of worship.[3] Thus, the reasoning goes, the Blueprint of last week cannot be challenged this week.[4] Likewise, the County states

---

[3] *Industry Guidance to Reduce Risk.* In a dropdown entitled "Places of worship and cultural ceremonies – updated April 12, 2021," it read in part, "In response to recent judicial rulings, effective immediately, location and capacity limits on places of worship are not mandatory but are strongly recommended." Accessed at https://covid19.ca.gov/industry-guidance/.

[4] The State protests that challenges to the various percentage caps found in the color-coded four tier orders were not specifically challenged by the Churches, and even if they were, these have been changed in the past number of weeks. State's Brief at 27-28. Whether the changes to the tiers result from science, politics, or caprice, absent a preliminary injunction places of worship face capacity restriction burdens not shouldered by airports that can be reinstated without notice or restraint by the State.

that it has withdrawn the challenged public health order after the Supreme Court's

*Gateway City* order was issued on February 26.[5]

In an order granting an emergency application for a writ of injunction issued

just before midnight on Friday, April 9, the Supreme Court addressed this affirmative

defense squarely and decisively:

> [E]ven if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case. And so long as a case is not moot, litigants otherwise entitled to emergency injunctive relief remain entitled to such relief where the applicants "remain under a constant threat" that government officials will use their power to reinstate the challenged restrictions.

*Tandon v. Newsom*, 593 U.S. __ (2021). In view of that principle, the modification or

withdrawal of shutdown orders by the State and County do not render this

interlocutory appeal moot.

This is not the first time the Supreme Court has made this type of

determination noting that "maneuvers designed to insulate a decision from review by

[an appellate court] must be viewed with a critical eye." *Knox v. Serv. Emps. Int'l Union,*

*Local 1000*, 567 U.S. 298 (2012). Therefore, an appeal may only be properly dismissed

as moot if events make "it absolutely clear that the allegedly wrongful behavior could

not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. 167, 189 (2000),

---

[5] The County advances an unorthodox position that the Supreme Court's granting of the emergency application for a writ of injunction moots the interlocutory appeal. Co. Brief, p. 1. This is incorrect. The Supreme Court enjoined the County during the *pendency* of the interlocutory appeal rather than for the entirety of the case. In other words, the order was not a preliminary injunction.

citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968).

Neither the State nor the County have carried their burden that "events have

completely and irrevocably eradicated the effects of the alleged violation." *Cty. of L.A.*

*v. Davis*, 440 U.S. 625, 631 (1979).

Thus, based on these rules, the *Tandon* Court's fourth principle is dispositive of

the mootness defense.

### ii.    *Expiration & Repeal*

The State and County continue to leave the door unlocked for further

shutdown orders. Governor Newsom's Executive Order N-33-20 and the Blueprint

for a Safer Economy has not been rescinded and contains no date of expiration. 16-

ER-4255-4256. In the same way, Santa Clara County's ordinance,[6] which has legally

enabled the County's director of public health to shut down places of worship, also

has neither been repealed nor does it have an expiration date. 16-ER-4147-4160. The

language of the ordinance is emphatic on this point. "This Ordinance shall remain in

full force and effect until [1] *repealed* by the Board of Supervisors or [2] *termination* of

the COVID-19 public health emergency." *Id.* Emphasis added. There has been no

repeal by the Board of Supervisors of the underlying ordinance granting authority to

the County Public Health Director to issue orders restricting religious worship and no

announcement by the Director of a termination of the public health emergency. As

---

[6] Santa Clara Co. Ordinance No. NS.9.291.

13

such, the County Defendants still retain authority to issue orders adverse to places of worship.

Absent repeal, amendment, or expiration of legislation, there is no presumption that the government is acting in good faith and will not return to its unconstitutional conduct. *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019). The recent denials of relief in COVID-19 related cases are consistent with this. *Danville Christian Academy, Inc. v. Beshear*, 141 S. Ct. 527 (2020) (executive order related to school shutdown set to expire in two weeks right after winter break); *Pleasant View Baptist Church v. Beshear*, No. 20-6399, 2020 WL 7658397 (6th Cir. Dec. 21, 2020) (executive order expired); *Ramsek v. Beshear*, 989 F.3d 494 (6th Cir. 2021) (governor's order was withdrawn); *Cassell v. Snyders*, 990 F.3d 539 (7th Cir. March 8, 2021) (order had expired).

The mere assertion by government defendants of voluntary cessation of an unconstitutional law is inadequate. There must be "abandonment" of the practice or law. "[A]bandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice." *Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1983). Failure to repeal the ordinance, executive order, and Blueprint which undergird the public health orders that shut down houses of worship, along with no expiration dates, disqualifies both the State and County of a defense based on mootness.

The County Board of Supervisors not only declined to repeal the ordinance, the new Capacity Directive issued by the Santa Clara Department of Public Health requires compliance "with any applicable capacity limitations imposed by the State's Blueprint for a Safer Economy." Co. Brief, p. 10-11. By this new directive, the County stands in the shoes of the State. That does not take the County off of the hook, rather its liability sits as coextensive with the State.

The issuance of the new directive undermines the County's position relative to mootness. This is similar to a holding where the Supreme Court refused to dismiss an appeal as moot after a city had entirely repealed and replaced a challenged ordinance because the replacement ordinance disadvantaged plaintiffs only "to a lesser degree" than the original one. *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 673 (1993). By mirroring the State's Blueprint, the County directive would only harm the Churches "to a lesser degree."

### iii. Repudiation

Besides the fact that the Blueprint, executive order, and ordinance have not been repealed or expired, there has been no repudiation by the Defendants. In contrast, the governor of Kentucky "publicly disavowed" any intention to renew the challenged order. *Cassell v. Snyders*, 990 F.3d at __, citing *Pleasant View Baptist Church v. Beshear*, No. 20-6399, __ Fed. App'x. __, 2020; *Ramsek v. Beshear*, 989 F.3d 494, __ (Governor Beshear represented that he would not enforce an order). *See also*, *Akina v. Hawaii*, 835 F.3d 1003, 1011 (9th Cir. 2016) (defendant disavowed holding any

15

election in the future); *Fikre v. FBI*, 904 F.3d 1033, 1040 (9th Cir. 2018) (no voluntary cessation when government does not repudiate and renounce past decision); *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015) (prosecutor never repudiated a statute as unconstitutional); *Rosemere Neighborhood Ass'n v. United States EPA*, 581 F.3d 1169, 1175 (9th Cir. 2009)("The government cannot escape the pitfalls of litigation by simply giving in to a plaintiff's individual claim without renouncing the challenged policy.").

Though the State is constantly amending the Blueprint, the Governor has made no public written or oral statements in the nature of disavowal or repudiation of the Blueprint, executive order, or any other public health order that caused the closure of houses of worship. Nothing of the sort exists in the record and attorneys for the State have made no such representations that the challenged conduct will forever cease. Note that the language used in last week's Blueprint (April 12) lifting the capacity ban on places of worship reads that "due to recent court decisions" certain changes have been made.[7] This is not the language of renunciation.

In like manner, no public statements by the County's Public Health Director or the Board of Supervisors repudiated past orders that banned indoor religious gatherings for the better part of a year or affirmed that like orders will not be issued in the future. Counsel for the County has not made any representations to this Court

---

[7] *Id.*

that the County Defendants are abandoning all such future unconstitutional conduct.

Finally, in the present case, there has been no declaration by either the State or County that the public health crisis has ended. Because the State and County continue to assert that there is a continuing public health crisis and the authorizing executive order, Blueprint, and County ordinance is still in place, the government Defendants have reserved to themselves the option of "reinstat[ing] the challenged restrictions." *Tandon, v. Newsom*, 593 U.S. __ (2021).

Failing to repeal the orders and ordinances that undergirded the government closure of houses of worship for the better part of a year, the Defendants have not carried their burden of showing the requisite repudiation of their past unconstitutional conduct necessary to render the case moot. This want of repentance and remorse, coupled with leaving themselves room to maneuver back into their previous positions, stand as strong indicia that no actual abandonment has occurred.

## II.   THE CHURCHES HAVE SUFFERED IRREPARABLE HARM.

Noticeably absent from the State's brief is a response to the assumption of irreparable harm due to a deprivation of constitutional rights for even minimal periods explained in *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This principle stands as so well established that it rises to the level of black letter law. Thus, in recent cases the Supreme Court and this Court did not need to commiserate over the presence of irreparable harm because First Amendment rights were being lost. *Roman Catholic*

*Diocese*, 141 S. Ct. 63, 67 (2020); *Tandon*, 593 U.S. at ___; *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1234 (9th Cir. 2020).

Opting not to address the well-established law on irreparable harm, the State chooses to substitute its own opinion of how religious institutions can or should gather for worship. Citing to the mild Santa Clara County climate, the State proposes that the faithful worship outside or in their cars at drive-in services. State Brief, p. 43-46. This Court has made clear that a physical building is indispensable to religious exercise. "Churches and synagogues cannot function without a physical space adequate to their needs and consistent with their theological requirements. The right to build, buy, or rent such a space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes." *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 634 F.3d 1037, 1069-70 (9th Cir. 2011). That the State is tone deaf to this fact underscores the necessity for judicial enforcement of the legal doctrine of the separation of church and state.

Next the State also claims that congregants can stay home and watch religious services online. *Id.* This latter view does violence to the English language because a congregation by definition is a group of people that congregate.

What is more, the suggestion that holding multiple services at 25% is not something either required or even suggested to the airline industry by the State such that an airline expands to four flights at 25% in lieu of one flight at full capacity. As explained elsewhere, this is because airports receive favorable treatment by the State

over places of worship. The unfavorable treatment visited on the Churches both underscores and exacerbates their irreparable harm.

## III. THERE HAS BEEN NO IMPROPER DELAY IN SEEKING RELIEF.

The State has been "moving the goal posts" (*Tandon*, 593 U.S. at __) for more than a year. This has created uncertainty and confusion for the Churches. The Governor's orders have had, and continue to have, no date of expiration. More than that, absent from his multi-layered Blueprint of color-coded tiers is any shade of green. When the government cobbles together a complex and tangled web of ever-changing rules, it is estopped from benefitting from the crisis of confusion that it creates. *South Bay II*, fn. 2 (Gorsuch J., concurring). By November of 2020 it became apparent to the Churches that the Governor would not reopen places of worship anytime in the foreseeable future. They thus filed suit before Thanksgiving. 1-ER-5.

Beyond that, the procedural history of this case makes clear that there has been no unwarranted delay. In quick succession after filing the complaint, the Churches sought a temporary restraining order (1-ER-5), filed a motion for a preliminary injunction (12-ER-3018), then a motion for an injunction pending appeal in the District Court (2-ER-79-91), after that a motion for an injunction pending appeal in this Court. When that latter motion was denied, the Churches filed an application for an emergency writ of injunction to the Circuit Justice (Justice Kagan) who referred the matter to the full Court. If the relief was sought in a dilatory manner, the Supreme Court would not have granted the application. Justice Kagan's dissent was based on

the reasons set forth in her dissent in *South Bay II*. *Gateway City Church v. Newsom*, 592

U. S. ___ (2021)(Kagan, J., dissenting). Like the District Court, the dissent did not

note any delay in bringing suit.

## IV.    THE BALANCE OF HARDSHIPS.

The one constant that the State and County have clung to for the last year is

the warning of impending doom if "superspreader" houses of worship do not remain

shuttered to the faithful. By this, the coronavirus served as a tool of enablement for

the government defendants to justify the suspension of the Bill of Rights.[8] But in the

midst of predictions of looming calamity, on April 12, 2021, the State lifted its

capacity restrictions on places of worship. Unlike prior changes to the Blueprint in

which court orders forced the Governor's hand, the State was not compelled by any

such order, but did so of its own volition. With that, the State's admonition that the

"risk to public health weighs heavily against an injunction" (State Brief at p. 48-51)

sends this apocalyptic narrative up in flames.  Thus the scales of justice tip heavily in

favor of preserving the public's liberty interests under the First Amendment.

---

[8] "Right now we're putting part of the Constitution on hold. We really are. Freedom of assembly. Right to practice religion." Katey Rusch, *How Do You Enforce a Law That Tramples the Land of the Free?*, THE NEW YORK TIMES (May 11, 2020), https://www.nytimes.com/2020/05/11/us/ coronavirus-california-lockdowns.html (quoting Santa Clara County Deputy District Attorney, Angela Alvarado).

## CONCLUSION

The four principles enumerated by the *Tandon* Court are dispositive of this case. As such, the Churches request that the order of the District Court denying the motion for a preliminary injunction as to the State and County be reversed during the pendency of this litigation.

Dated: April 16, 2021

s/ Kevin Snider

Kevin T. Snider, *Counsel of Record*
Emily C. Mimnaugh
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel.   (916) 857-6900
Email: ksnider@pji.org
            emimnaugh@pji.org

Marlis McAllister
McALLISTER LAW GROUP
P.O. Box 756
Pine Grove, CO 80470
Tel.   (650) 346-3792
E-mail: marlis@mcallisterlaw.net

Sharonrose Cannistraci
CANNISTRACI LAW FIRM
236 N. Santa Cruz, Ave., Suite 217
Los Gatos, California 95030
Tel.   (408) 307-5662
E-mail: cannistracilaw@gmail.com

## STATEMENT OF RELATED CASES

There are no related cases.

## CERTIFICATE OF TYPE SIZE AND STYLE

This Brief is composed in 14-point Garamond type.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains no more than 7,000 words. According to Microsoft Word's "Statistics," this document contains 6,323 words inclusive of the cover page, table of contents and table of authorities .

April 16, 2021

s/ Kevin Snider
Kevin T. Snider
Attorney for Plaintiffs/Appellants

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and Ninth Cir. R. 25-5(e) I hereby certify that on April 16, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Kevin Snider